UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
04 AUG 16 AM 10:04
U.S. [illegible]
N.D. OF ALABAMA

ENTERED
AUG 16 2004

| | |
|---|---|
| HENRY TYRONE DOUGLAS, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. CV-03-S-3450-NE |
| RENT-A-CENTER, INC., *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff filed this suit on December 31, 2003, against his former employer, Rent-A-Center, Inc. ("RAC"). He asserts that RAC demoted him, denied him a promotion, terminated his employment, and subjected him to a hostile work environment, all because of his race. He also asserts a state law claim for negligent training, supervision and retention, based on RAC's failure to adequately train and supervise its employees in order to prevent their alleged discriminatory behavior.[1] RAC moved to compel arbitration of all of plaintiff's claims in accordance with the terms of the arbitration agreement between the parties.[2] The court ordered plaintiff to file a response to RAC's motion by July 28, 2004,[3] but plaintiff failed to do so.

---

[1] *See* doc. no. 1 (complaint).
[2] *See* doc. no. 5 (motion to compel arbitration).
[3] *See* doc. no. 9 (order to respond to motion to compel arbitration).

The Federal Arbitration Act ("FAA") establishes a federal policy favoring arbitration. *See, e.g., Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987). Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983).

The existence of a valid contract to arbitrate is determined by state law. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995). Under Alabama law, there are two prerequisites for a valid arbitration contract: "(1) there must be a written agreement calling for arbitration[;] and (2) the contract in which the arbitration agreement appears must relate to a transaction involving interstate commerce." *Prudential Securities v. Micro-Fab, Inc.*, 689 So. 2d 829, 832 (Ala. 1997) (citation omitted).

Both of the above requirements clearly are satisfied. First, a written agreement calling for arbitration clearly exists. Since approximately July of 2000, RAC has required all new employees to execute a "Mutual Agreement to Arbitrate Claims" ("Arbitration Agreement") as a condition of their employment.[4] Plaintiff signed a

---

[4] *See* doc. no. 5 (motion to compel arbitration), Exhibit 1 (Declaration of Karen H. Scranton), at ¶ 3.

copy of the Arbitration Agreement on July 17, 2001, the day he commenced his employment with RAC.[5] Plaintiff signed a second, identical copy of the Arbitration Agreement on January 2, 2002, after he received a promotion.[6] He signed a third, identical copy of the Arbitration Agreement on August 12, 2002, when he received another promotion.[7]

The Arbitration Agreement provides, in pertinent part:

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my application for employment, assignment/employment, or the termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary, and affiliated entities, (4) the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (5) all successors and assigns of any of them.
>
> The only claims that are arbitrable are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law. The claims covered by this Agreement include, but are not limited to: claims for wages or other compensation due; . . . claims for discrimination (including, but not limited to race . . .) . . . .
>
> Except as otherwise provided in this Agreement, both the

---

[5] *See id. See also id.* at Exhibit A to Exhibit 1 (Arbitration Agreement dated July 17, 2001).

[6] *See* Scranton Declaration, at ¶ 3. *See also id.* at Exhibit B to Exhibit 1 (Arbitration Agreement dated January 2, 2002).

[7] *See* Scranton Declaration, at ¶ 3. *See also id.* at Exhibit C to Exhibit 1 (Arbitration agreement dated August 12, 2002).

> Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination to the Equal Employment Opportunity Commission, or a similar fair employment practices agency, or an administrative charge within the jurisdiction of the National Labor Relations Board) in any way related to any claim covered by this Agreement.[8]

The coverage of the Arbitration Agreement clearly extends to all of plaintiff's claims, since all of the claims arise out of RAC's alleged race discrimination.

Further, the Arbitration Agreement clearly relates to a transaction involving interstate commerce. As RAC's Director for EEO Compliance states, "RAC is in the rent-to-own business and is engaged in interstate commerce through, among other things, the sale and shipment of products, interstate communications and the purchase of equipment."[9] Each employee who signs the Arbitration Agreement acknowledges his understanding that RAC "is engaged in transactions involving interstate commerce and that [his] assignment/employment with [RAC] involves such commerce."[10]

Because a valid contract calling for arbitration exists, and because plaintiff has offered no opposition, defendant's motion to compel arbitration will be granted. Further, the court is of the opinion that plaintiff's claims should be stayed pending arbitration. Though there is case law in other circuits supporting the proposition that

---

[8] *See, e.g., id.* at 1.

[9] Scranton Declaration, at ¶ 6.

[10] *See, e.g.,* doc. no. 5 (motion to compel arbitration), Exhibit C to Exhibit 1 (Arbitration Agreement dated August 12, 2002), at 3.

under section 3 of the Federal Arbitration Act, 9 U.S.C. § 3,[11] courts have the discretionary authority to dismiss cases when compelling arbitration, the Eleventh Circuit adheres to a more literal interpretation of the statute. In *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698 (11th Cir. 1992), the Eleventh Circuit concluded that district courts do not have the power to choose dismissal over a stay:

> The district court properly found that the state law claims were subject to arbitration, but erred in dismissing the claims rather than staying them. Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration. 9 U.S.C. § 3. If the parties do not proceed to arbitration, the court may compel arbitration. 9 U.S.C. § 4. Therefore, we vacate the dismissal of the state law claims and remand with instructions that judgment be entered staying all claims pending arbitration.

*Id.* at 699.

In *Lloyd v. Hovensa, LLC*, 369 F.3d 263 (3rd Cir. 2004), the Third Circuit expressed a similar stance on the issue, basing its reasoning primarily on the clear statutory language, but also providing some practical justifications for entering a stay rather than an order of dismissal. *Id.* at 268-271. The court noted that a stay "relieves

---

[11] 9 U.S.C. § 3 reads as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been held in accordance with the terms of the agreement*, providing the applicant for the stay is not in default in proceeding with such arbitration. [Emphasis supplied.]

the party entitled to arbitrate of the burden of continuing to litigate the issue while the arbitration process is on-going, and it entitles that party to proceed immediately to arbitration without the delay that would be occasioned by an appeal of the District Court's order to arbitrate."[12] *Id.* at 269. For the same reasons, this court finds that a stay of the proceedings, rather than dismissal, is appropriate here.

Nevertheless, the file may be closed for administrative and statistical purposes. *See Pitchford v. AmSouth Bank,* 285 F. Supp. 2d 1286, 1297 (M.D. Ala. 2003) (closing file administratively after entering stay but advising parties of their right to request reinstatement); *Nazon v. Shearson Lehman Brothers, Inc.,* 832 F. Supp. 1540, 1543 (S.D. Fla. 1993) (same). Such action will have no effect on the court's retention of jurisdiction, and the file may be re-opened on either party's motion. *See Pitchford,* 285 F. Supp. 2d at 1297.

An appropriate order will be entered contemporaneously herewith.

DONE this 13th day of August, 2004.

_____
United States District Judge

---

[12] The court in *Bender* also recognized the fact that stays, unlike dismissals, are not final decisions and are thus not appealable. The court stated, "[i]f the district court had stayed the state law claims and compelled arbitration under 9 U.S.C. §§ 3 – 4, this order would not have been appealable under 9 U.S.C. §§ 16(b)(1) and (2)." 971 F.2d at 699.